| | |
|---|---|
| QUENTIN FREEMAN, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ) <br> FNU PRICE, ) <br> ) <br> Defendant. ) <br> ) | <br><br><br><br><br>**MEMORANDUM OF** <br> **DECISION AND ORDER** |

**THIS MATTER** is before the Court on Plaintiff's "Motion of Relief From Default Judgement [*sic*]" [Doc. 19], which the Court will construe as a motion for entry of default, and Defendant's Motion to Dismiss [Doc. 20].

I.     **BACKGROUND**

Pro se Plaintiff Quentin Freeman ("Plaintiff") is a prisoner of the State of North Carolina currently incarcerated at Alexander Correctional Institution in Taylorsville, North Carolina. On June 9, 2025, Plaintiff filed this action by unverified Complaint pursuant to 42 U.S.C. § 1983 naming FNU Price, FNU Hodge, and FNU Taylor, all identified as officials at Foothills Correctional Institution in Morganton, North Carolina, as Defendants. [Doc. 1]. Plaintiff's retaliation claim against Defendant Price survived initial review and the remaining Defendants and remaining claims were dismissed in accordance with the Court's Order. [Doc. 6]. In pertinent part, Plaintiff alleged that Defendant Price retaliated against him for filing grievances by denying Plaintiff visitation with his fiancé and transferring Plaintiff out of his unit on May 30, 2025. [Doc. 1 at 5-6].

In the section of the Complaint regarding exhaustion of administrative remedies, Plaintiff

alleged that he filed a grievance on Defendant Price for retaliation "by not answering [Plaintiff's] grievances & having [Plaintiff] moved off the unit," as well as complaining of the alleged conduct by the now dismissed Defendants, but that the grievance was not processed. [Id. at 8].

Defendant Price waived service of the Complaint. [Doc. 14]. After the Court granted Defendant Price three extensions of time to answer the Complaint, his deadline to answer was November 7, 2025. [Docs. 16, 17, 18; 11/6/2025 Text-Only Order]. On November 7, 2025, after presumably not yet having received copies of the Court's text orders extending Defendant's deadline, Plaintiff filed a motion for entry of default. [Doc. 19].

The same day, Defendant Price timely filed the pending motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] [Doc. 20]. In support of his motion, Defendant submitted a brief; Declarations of Counsel and of Executive Director of the Inmate Grievance Resolution Board (IGRB) Adrina G. Bass; a copy of Plaintiff's one fully exhausted grievance between June 1, 2024, and August 19, 2025; and copies of one of Plaintiff's unexhausted grievances from the same time frame and his Correspondence Tracking System record. [Docs. 21, 21-1 to 21-5]. Defendant argues that Plaintiff failed to exhaust administrative remedies pursuant to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), before filing this action. [Doc. 21].

On November 10, 2025, this Court entered an order, in accordance with <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of his right to respond to Defendant's motion and warning him that his failure to timely to do so "will likely lead to the granting of relief that Defendant seeks." [Doc. 22 at 1]. Plaintiff nonetheless failed to respond to Defendant's motion.

---

[1] The Court, therefore, will deny Plaintiff's motion for entry of default.

This matter is now ripe for adjudication.

## II. DISCUSSION

### A. Abandonment

Because Plaintiff has failed to respond to Defendant's motion to dismiss, particularly given the Court's warning that failing to respond would likely result in dismissal, Plaintiff is presumed to have abandoned his claim against the Defendant. See Evans v. City of Lynchburg, 766 F.Supp.3d 614, 618-19 (W.D. Va. Feb. 5, 2025) ("Failure to respond to conspicuous, nonfrivolous arguments in an opponent's brief constitutes waiver of the corresponding claims.") (collecting cases); Sasser v. Safe Home Sec., Inc., No. 1:18CV746, 2019 WL 3858607, at *5 (M.D.N.C. Aug. 16, 2019) (failing to respond to argument constitutes abandonment of a claim) (collecting cases); Taccino v. Ford Motor Co., No. CV GLR-18-913, 2019 WL 1429263, at *9 (D. Md. Mar. 29, 2019) ("when a party fails to respond to an argument made in a motion to dismiss, they abandon that claim").

The Court, therefore, will grant Defendant's motion and dismiss this action with prejudice because Plaintiff has abandoned his one remaining claim. Even if Plaintiff had not abandoned his claim, the Court would grant Defendant's motion in any event, though without prejudice, for Plaintiff's failure to exhaust his administrative remedies before filing this action.

### B. Exhaustion

The PLRA requires a prisoner to exhaust administrative remedies before filing a section 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. The PLRA's exhaustion requirement

applies to all inmate suits about prison life. Porter v. Nussle, 534 U.S. 516, 532 (2002). There is "no question that exhaustion is mandatory under PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524). The PLRA requires "proper" exhaustion, which means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)).

The exhaustion of administrative remedies must occur before a civil action is commenced. Porter, 534 U.S. at 516. A prisoner may not exhaust his administrative remedies during the pendency of a § 1983 action. Germain v. Shearin, 653 Fed. Appx. 231, 234 (4th Cir. 2016); French v. Warden, 442 F. App'x 845, 846 (4th Cir. 2011). An inmate, however, is not required to affirmatively show exhaustion in his complaint. See Bock, 549 U.S. at 216. "Rather, failure-to-exhaust is an affirmative defense that must be raised by the defendant." Wilcox v. Brown, 877 F.3d 161, 167 (4th Cir. 2017) (citing Bock, 549 U.S. at 216). "[D]espite the fact that failure-to-exhaust is an affirmative defense, a prisoner's complaint may be dismissed for non-exhaustion 'in the rare case where failure to exhaust is apparent from the fact of the complaint.'" Id. (quoting Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 682 (4th Cir. 2005)).

A prisoner, however, need only exhaust those remedies actually available. Ross v. Blake, 578 U.S. 632, 635 (2016). "Available" means "capable of use for the accomplishment of a purpose" and that which "is accessible or may be obtained." Id. at 642 (internal quotation marks and citation omitted). Exhaustion is excused "if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). The Plaintiff, however, must show that administrative remedies were not available. Graham v. Gentry, 413 Fed. App'x 660, 663 (4th Cir. 2011) (finding it significant that the record was devoid

4

of evidence that any jail official impeded or discouraged any efforts that detainee-plaintiff made or could have made to file a grievance).

The NCDAC has established the ARP, a three-step procedure governing submission and review of inmate grievances. See Moore, 517 F.3d at 721 (regarding the comparable ARP procedures at NCDAC-predecessor North Carolina Department of Public Safety); [Doc. 21-1 at ¶ 6: Bass Dec.]. Inmates are required to exhaust administrative remedies with the NCDAC in accordance with the ARP. See id. An inmate does not exhaust administrative remedies with the NCDAC until all three steps are completed. See id.

In Plaintiff's substantive allegations in support of his retaliation claim, he alleged that Defendant Price retaliated against him for filing a grievance against former Defendant Hodge for denying Plaintiff's request to attend Islamic services on May 24, 2025, by denying Plaintiff visitation with his fiancé and having Plaintiff moved off his unit on May 30, 2025. [Doc. 1 at 4-6]. In support of exhaustion, Plaintiff alleged that he submitted a grievance complaining that Defendant Price retaliated against him by not answering his grievances and having Plaintiff moved off the unit. [Id. at 8]. Plaintiff, however, has not submitted a copy of the purported grievance complaining of the alleged incident, which he claims was not processed.

In support of his motion to dismiss, Defendant provides copies of Plaintiff's one fully exhausted grievances submitted between June 1, 2024, and August 19, 2025, as provided by IGRB Executive Director Bass, as well as one of Plaintiff's initiated grievances during this time frame and his Correspondence Tracking System record, which documents Plaintiff's written complaints and grievances submitted between May 2018 and August 13, 2025. See Yarber v. Capital Bank, 944 F.Supp.2d 437, 441 (E.D.N.C. Mar. 18, 2013) ("The court may also consider documents attached to the complaint and documents attached to the motion to dismiss if those documents are

5

integral to the complaint and authentic."); see also Doc. 21-1 at ¶¶ 10-12: Bass Dec. (attesting that the substance and fact of the Declaration, which includes the grievance records, is true and correct), Doc. 21-3: Hoyd Dec. (same).

These records show that, between June 1, 2024, and August 19, 2025, Plaintiff fully exhausted only one grievance, which was submitted on May 21, 2025, and did not involve the subject incident. [Doc. 21-2 at 1-7]. These records also show that Plaintiff submitted a grievance on May 31, 2025, complaining about suspension of his tablet privileges.[2] [Doc. 21-4 at 2]. Plaintiff agreed with the Step One – Unit Response to this grievance, which advised Plaintiff that his privileges were suspended for using racial slurs in a message. [Id. at 1]. The records do not show, however, that Plaintiff submitted a grievance complaining of Defendant Price's alleged retaliation. [See Docs. 21-4, 21-5].

Defendant has plainly demonstrated that Plaintiff did not exhaust a grievance regarding the subject incident. Moreover, the records submitted by Defendant show that Plaintiff had ready access to the grievance procedure, was able to submit and exhaust grievances while at Foothills, and that he submitted a grievance regarding the subject of one of Plaintiff's dismissed claims in this matter, which, contrary to his allegations, was processed by Foothills. [See Doc. 21-4].

Without a contrary showing by Plaintiff, the Court concludes from the materials before it that Plaintiff did not fully exhaust his administrative remedies before filing the instant action. As such, even if Plaintiff had not abandoned his claim, the Court would dismiss this action without prejudice for Plaintiff's failure to exhaust. See Harris v. Midford, No. 1:10-cv-263, 2011 WL 1601446 (W.D.N.C. Apr. 27, 2011).

---

[2] This suspension of Plaintiff's tablet privileges was the subject of one of Plaintiff's claims that was dismissed on initial review. [Doc. 1 at 5; Doc. 6 at 6].

### III. CONCLUSION

In sum, for the reasons stated herein, the Court grants Defendant's motion to dismiss.

### ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Dismiss [Doc. 20] is **GRANTED** and this action is hereby **DISMISSED with prejudice** in accordance with the terms of this Order.

**IT IS FURTHER ORDERED** that Plaintiff's Motion of Relief From Default Judgement [Doc. 19] is **DENIED**.

**IT IS SO ORDERED**.

Signed: January 30, 2026

*/s/ Kenneth D. Bell*

Kenneth D. Bell
United States District Judge